**Mark C. HUNN, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 282S48.**

Supreme Court of Indiana.

March 24, 1983.

Patricia Riley, Rensselaer, for appellant.

Linley E. Pearson, Atty. Gen., William E. Daily, Chief Counsel/Staff, Indianapolis, for appellee.

DeBRULER, Justice.

Appellant, Mark Hunn, was convicted in a trial by jury in the Jasper Circuit Court of armed robbery, a class B felony, defined by Ind.Code § 35–42–5–1. He was sentenced to a term of imprisonment of fifteen years. In this, his direct appeal, appellant contends that (1) the evidence was insufficient to convict, and (2) that a jury instruction on evidence of flight was improper.

The statute requires a knowing or intentional state of mind for commission of robbery. Here the prosecution charged that appellant "knowingly" committed the offense. According to Ind.Code § 35–41–2–2 a person "engages in conduct 'knowingly', if when he engages in the conduct he is aware of a high probability that he is doing so". The prosecution must prove the required state of mind to establish guilt. It is appellant's first contention that the prosecution did not do so by sufficient evidence. In determining this question we do not weigh the evidence nor resolve questions of credibility, but look to the evidence and

reasonable inferences therefrom which support the verdict. *Smith v. State,* (1970) 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Glover v. State,* (1970) 253 Ind. 536, 255 N.E.2d 657.

█ The entire episode as described by the witnesses shows the following. On May 19, 1981, appellant, along with his younger brother David, at around 2:30 a.m., were travelling together in a car down an interstate highway in Japser County when, in order to accommodate appellant's desire for some cigarettes, they pulled off at a gas station. David was driving, and the car belonged to a girlfriend of David. After the car was stopped both men exited the car and entered the station. Right after they got inside the door, David pulled a gun, pointed it at the attendant, and said "This is it", and "Hurry up, hurry up." The attendant opened the cash drawer and stepped back. Appellant came around behind the attendant and started taking money from the drawer. After the drawer was empty David asked the attendant if he had any more money. The attendant responded "No" and David then asked for his billfold. The attendant answered that he had no billfold and David continued to demand more money. The attendant then took his own money out of his shirt pocket and handed it to appellant. They then took cigarettes and a coke. The attendant entered a bathroom of his own volition and the door then automatically closed. Appellant and his brother then left the inside of the station, re-entered the car, and proceeded down the highway together. It is not clear whether appellant or his younger brother drove the car during the remainder of the episode, but they continued on together as the lone occupants in the car until they reached a rest area where they pulled off, and stopped. The money was then counted. At some point the gun was placed under the front seat on the driver's side. They continued on in the car until within a few minutes they were spotted by a police car; a high speed chase followed. It ended when they were forced to stop. Cigarettes were found on the front seat. Approximately three hundred dollars was removed from the pockets of appellant. The gun was found and secured.

In support of the insufficiency claim, appellant points out that he did not speak while in the gas station, wielded no weapon, and did not threaten the use of force. More is attributable to the evidence, however, than this. According to the attendant, both men entered together and appellant's brother immobilized him with the gun and announced his purpose. Appellant saw the gun, heard the threats, and saw the submission of the attendant. He saw the money in the cash drawer. He was aware of these things as he moved behind the attendant and grabbed the money from the cash drawer and later received the money handed to him by the attendant under further threat by his brother. This conduct was that of a full participant in an armed robbery. *Baker v. State,* (1980) Ind., 402 N.E.2d 951. The jury was warranted in concluding that appellant's conduct within the station was accompanied by an awareness that he was engaging in a joint criminal enterprise involving all of the elements of armed robbery.

In *Morris v. State,* (1979) Ind., 394 N.E.2d 151, we found the evidence sufficient where the defendant entered a grocery with another and stopped at a rack and asked the grocer the price of cookies. While his companion drew a gun and demanded money and received it, the defendant Morris moved to his side, and then the two ran from the store together. By comparison, the evidence that appellant knew what he was about at the gas station, is stronger. Appellant's claim can therefore fare no better than the claim in *Morris.*

█ Appellant next contends that the trial court was in error in giving the jury an instruction regarding evidence of flight over his objection that it was not warranted. As has been recited, after the episode at the filling station appellant and his

brother left in the car together, and after it was discovered that they had drawn the attention of a police car, the driver took off at a high rate of speed and avoided capture for a short period of time. Appellant objected to the instruction because there was no evidence that he was driving the car at the time. While the evidence does not disclose which of the two was driving at the time, the instruction was nevertheless correctly given. The lone two occupants of the car, appellant and his brother, had been acting together and in concert from the beginning to the end of these events. Appellant was the older of the two. They had pulled into the station in the first place to accommodate appellant's desire to have cigarettes. They entered the store together, and together they carried out the robbery. They left the station together and entered the car and drove to a spot along the road where the stolen money was counted. It was only a short period of time after the robbery, and during the continuance of efforts to move away from the area of the robbery, that the attempt to avoid capture occurred. The car carried the gun and the stolen money. At least part of the money was in appellant's pockets. From these factors, one can reasonably infer that the operation of the car so as to avoid capture was, like the conduct of the crime itself, a joint enterprise in which both men concurred and participated. It was not error to give the instruction because of a lack of evidentiary basis.

The conviction is therefore affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.