Gregory S. **ANDERSON,** Appellant–
Defendant,

v.

**STATE of Indiana,** Appellee–Plaintiff.

No. 82A01–0008–CR–283.

Court of Appeals of Indiana.

March 16, 2001.

Michael J. Cox, Evansville, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Adam M. Dulik, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Gregory S. Anderson appeals his convictions and sentences for reckless homicide, a Class C felony, and false informing, a Class B misdemeanor. He raises five issues, which we restate as:

I. Whether the trial court erred in denying his motion to sever the charges;

II. Whether the trial court erred in denying his motion to separate witnesses;

III. Whether the trial court committed fundamental error in allowing the State to cross-examine Anderson about prior vehicle accidents in which he was involved;

IV. Whether the convictions are supported by sufficient evidence; and

V. Whether the trial court erred in sentencing him.

We affirm.

### Facts and Procedural History

On August 15, 1999, Gregory S. Anderson was working as a "road trooper" for the Indiana State Police. Near the end of his shift at approximately 11:30 p.m., Anderson was driving south on U.S. Highway 41 in Vanderburgh County at a

high rate of speed without his siren or emergency lights activated.

Danny Hensley was driving north on U.S. 41 and pulled into the left turn lane at Inglefield Road. The intersection has flashing yellow traffic lights facing north and south and red signals facing east and west. As Hensley was turning left, his vehicle was struck by Anderson's police car, which was traveling between ninety-six and ninety-nine miles per hour. Hensley died at the scene.

Anderson gave a statement to police on August 18. In that statement, Anderson said that, although he was driving at a high rate of speed, his speed was necessary in order to "pace" a car that he had seen ahead of him and believed to be speeding. Several witnesses, who had been traveling southbound on U.S. 41 in the fifteen mile stretch north of the accident scene, came forward to say that they had observed Anderson driving in the left lane of U.S. 41 at a high rate of speed without his emergency lights activated. The witnesses did not, however, see anyone speeding in front of him.

Anderson was charged with reckless homicide, a Class C felony, and false informing, a Class B misdemeanor. A jury found him guilty of both counts, and he was sentenced to four years for reckless homicide to be served concurrent to 180 days for false informing. He appeals.

## I. Motion for Severance

■ Anderson first contends that he was entitled to a severance of the reckless homicide and false informing charges. According to statute:

Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:

(1) are of the same or similar character, even if not part of a single scheme or plan; or

(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Ind.Code § 35–34–1–9(a) (1998).

The trial court held a pretrial hearing on Anderson's motion for severance. The State explained at the hearing that its evidence would show that Anderson was driving his police vehicle at approximately 100 miles per hour. Although Anderson told investigators that he was chasing a speeder, statements given by several witnesses contradicted Anderson's account. Whether Anderson was in fact chasing a speeder was crucial to determining whether his conduct was reckless and thus whether his statements to investigators were false. In short, this case is an archetypical example of two charges that are based on "a series of acts connected together." Thus, severance was not required under Indiana Code section 35–34–1–9(a)(2).

■ In the alternative, Anderson argues that severance was required under Indiana Code section 35–34–1–11(a), which provides that a trial court

shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:

(1) the number of offenses charged;

(2) the complexity of the evidence to be offered; and

(3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

Here, there were only two charges based on the relatively straightforward testimony of eyewitnesses and investigators. Although the charges were related, we perceive no difficulty in a jury distinguishing the evidence and law that applied to each. Severance was not required under Indiana Code section 35–34–1–11(a).

## II. Separation of Witnesses

Anderson next contends that the trial court erred in denying his motion to sepa-

rate witnesses. Defense counsel moved for a separation of witnesses shortly after the State had begun questioning its first witness, a dispatcher who answered Anderson's 911 call immediately after the accident. No other witnesses were in the courtroom at the time, and the dispatcher had answered only eleven questions regarding her name, position, and the general nature of the call she received· from Anderson. Nevertheless, the trial court denied the motion for separation, reasoning "it's got to be done before the trial starts, and the witnesses start testifying. You can't do it in the middle of the evidence." R. at 271.

Clearly, the trial court's ruling was correct under pre-Rules of Evidence authority. In *Kuchel v. State*, 501 N.E.2d 1045, 1047 (Ind.1986), our supreme court stated that "when there is to be a separation of witnesses the motion must be made and ruled upon before any witnesses have testified in the cause."

However, the separation of witnesses is now governed by the Indiana Rules of Evidence. Evidence Rule 615 provides, in relevant part: "At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of or discuss testimony with other witnesses, and it may make the order on its own motion...." There is no mention of when the request must be made.

In addition to the language of the rule, there is authority to support Anderson's position that his request was timely. *See, e.g.,* 13 Robert L. Miller, *Indiana Practice,* § 615.102, at 280 (2d ed. 1995) ("Rule 615 does not specify the timing of the order. There is some authority for the proposition that a motion may be made at any time, even after some witnesses have testified.")

(footnotes omitted); 4 *Weinstein's Federal Evidence* § 615.05 (2d ed. 2000) ("Rule 615 is silent on when a request for exclusion must be made. To be effective, the request should be made before testimony begins.... Nevertheless, each party is entitled to the exclusion of witnesses on request, whenever the request is made.").

■ Ideally, a motion for separation of witnesses will be made before any witness testifies. However, a motion sometime after testimony has begun may be permissible as long as basic notions of fundamental fairness are not offended. Here, where a witness had only begun to testify about general background information, Anderson's motion for separation of witnesses should have been granted. Nevertheless, reversal is not required.

■ "[A]n error will be found harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." *Fleener v. State,* 656 N.E.2d 1140, 1142 (Ind.1995); *see also* Ind. Trial Rule 61. Here, there is no evidence that any witnesses were in the courtroom during the testimony of any other witnesses. Moreover, even if they were, the State and the defense were treated equally and with fundamental fairness. Thus, we hold that the trial court's erroneous ruling did not affect Anderson's substantial rights.[1]

### III. Fundamental Error

■ Anderson next argues that the trial court committed fundamental error in allowing the State to cross-examine him about other accidents in which he had been involved. He concedes that he did not object to the State's questions at trial,

---

1. The State also posits that any error was "waived" because Anderson has not created a sufficient record for meaningful review. Under the State's argument, it is unclear what defense counsel should have done after the unfavorable ruling to preserve the issue and create a meaningful record for appellate review. Presumably, the State would require

defense counsel to lodge an objection (and potentially interrupt a witness's testimony) any time a witness entered the courtroom throughout the remainder of the trial. Although we believe the State's waiver argument is problematic, we need not address it because we have elected to address Anderson's claim on its merits.

which normally results in forfeiture of any claim of error on appeal. *Ingram v. State,* 547 N.E.2d 823, 829 (Ind.1989). However, he seeks to avoid procedural default by couching his argument in terms of fundamental error.

Our supreme court has defined fundamental error as error "so prejudicial to the rights of the defendant as to make a fair trial impossible." *Barany v. State,* 658 N.E.2d 60, 64 (Ind.1995). The court has also observed, to rise to the level of fundamental error, an error "must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Etienne v. State,* 716 N.E.2d 457, 462 (Ind. 1999) (quoting *Wilson v. State,* 514 N.E.2d 282, 284 (Ind.1987)). Not surprisingly, the fundamental error exception to the contemporaneous objection requirement has been described as "an extremely narrow one" and its invocation has been "rare." *Stevens v. State,* 691 N.E.2d 412, 420 n. 2 (Ind.1997). The reason for this is simple:

> [A] party may not sit by during trial and make no objection or complaint, await the outcome of the trial, and if unfavorable, then claim error which could have at the time been promptly called to the attention of the trial court. A trial court should be given the opportunity to correct its own mistakes before asking a review from a court of appeals.

*Id.* (quoting *Brown v. State,* 239 Ind. 184, 188, 154 N.E.2d 720, 721 (1958)).

 Although it is understandable that Anderson would seek to avoid procedural default occasioned by his trial counsel's failure to object, fundamental error is not the appropriate vehicle for this alleged error. Rather, this claim is more appropriately brought as a claim of ineffective assistance of counsel, a claim that was not developed on this direct appeal record and thus wisely not brought in this appeal. *See generally Woods v. State,* 701 N.E.2d 1208 (Ind.1998). In any event, even if this claim were available as one of fundamental

error, it fails because the State's solicitation of information about Anderson's prior accidents was not so prejudicial as to make a fair trial impossible. *Barany,* 658 N.E.2d at 64.

## IV. Sufficiency of the Evidence

 Anderson challenges the sufficiency of evidence to support his two convictions. We review such claims under well-settled principles. We do not reweigh the evidence or judge the credibility of witnesses. *Perry v. State,* 638 N.E.2d 1236, 1242 (Ind.1994). We consider only the evidence that supports the verdict and the reasonable inferences drawn therefrom. *Id.* We will uphold a conviction if there is substantial evidence of probative value from which a jury could have found the defendant guilty beyond a reasonable doubt. *Robinson v. State,* 699 N.E.2d 1146, 1148 (Ind.1998).

 In order to meet its burden as to the false informing count, the State was required to prove that Anderson "[gave] false information in the official investigation of the commission of a crime, knowing the report or information to be false." Ind.Code § 35-44-2-2(c)(1) (1998). Anderson's version of the event, immediately afterward and in a statement to an investigator three days later, was that he was driving at a high rate of speed to "pace" a speeder. However, the State presented several witnesses who testified that, although they observed an Indiana State Police vehicle speed by, they did not see a speeding vehicle in front of it. Based on this conflicting testimony, the jury could reasonably infer that Anderson's statement was false. Therefore, there is sufficient evidence to support his false informing conviction.

 In order to meet its burden as to the reckless homicide conviction, the State was required to prove that Anderson recklessly killed another human being. *Id.* § 35-42-1-5. According to statute, "[a] person engages in conduct 'recklessly' if he

engages in the conduct in plain, conscious, and unjustifiable disregard of the harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." *Id.* § 35–41–2–2(c).

Anderson does not contest that he was driving approximately 100 miles per hour, without his emergency lights activated, through an intersection marked with a yellow flashing light. Nevertheless, he contends this was proper police procedure because he was attempting to "pace" a speeding car ahead. According to Anderson, the "acceptable standard of conduct" must take into account the necessity of driving above the speed limit without emergency lights in order to "pace" speeding vehicles.

[13] This argument is flawed in at least two respects. First, the jury, by its verdict on the false informing count, rejected Anderson's version that he was chasing a speeder. Second, although the "standard of conduct" may be somewhat different for police officers who are pursuing their official duties, the determination of the standard of conduct and whether it was breached is a classic factual question best left to the jury's determination. Appellate reversal in such cases would require a reweighing of the evidence, which we are unable and unwilling to do. Here, the jury rejected Anderson's argument that his conduct conformed to the applicable standard of conduct. Because there is substantial evidence of probative value to support the jury's conclusion that Anderson's driving was reckless, we affirm his reckless homicide conviction.[2]

## V. Sentencing

As a final point, Anderson makes a convoluted claim of sentencing error. He appears to attack both the trial court's sentencing statement on procedural grounds and the length of the sentence as manifestly unreasonable. Our supreme court has noted that these are two separate inquiries reviewed under different standards. *Noojin v. State*, 730 N.E.2d 672, 678 (Ind.2000) (citing *Hackett v. State*, 716 N.E.2d 1273, 1276 n. 1 (Ind.1999)).[3]

[14–16] As regards the sentencing statement, we note that Anderson received the presumptive sentence of four years for reckless homicide. A trial court that imposes the presumptive sentence is under no obligation to explain its reasons through the delineation of aggravating and mitigating circumstances. *O'Neill v. State*, 719 N.E.2d 1243, 1244 (Ind.1999). "When the basic sentence is imposed, this Court will presume the trial court considered the alternatives." *Id.* (citations omitted).[4]

[17, 18] To the extent that Anderson attempts to rebut this presumption with his claim that the trial court "was required

---

2. Anderson also notes that he moved for a directed verdict (judgment on the evidence) at the close of the State's case. Without citation to authority or cognizable argument, he asserts that "the trial court was obliged to grant that motion. The court's failure to withdraw it constituted reversible error." Brief of Appellant at 17–18. To the extent this is a separate argument from his sufficiency claim, it is waived for the failure to present a cognizable argument. Ind.Appellate Rule 8.3(A)(7).

3. We could easily find Anderson's claim waived. Appellate Rule 8.3(A)(7) requires that the argument "contain the contentions of the appellant with respect to the issues presented, the reasons in support of the conten-

tions along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review." Anderson's argument lacks coherence and cites only one case to support a general principle: that trial courts are required to identify all significant aggravating and mitigating circumstances when they impose a sentence that deviates from the presumptive. *Culpepper v. State*, 662 N.E.2d 670, 677 (Ind.Ct.App.1996).

4. A trial court is not required to weigh aggravating and mitigating circumstances in misdemeanor cases. *Hoage v. State*, 479 N.E.2d 1362, 1365 (Ind.Ct.App.1985), *trans. denied* (citing Ind.Code § 35–38–1–3 (1985)).

to at least identify ... remorse as a mitigating factor," Brief of Appellant at 20, his claim fails. "The trial court is not obligated to accept the defendant's assertions as to what constitutes a mitigating circumstance." *Legue v. State,* 688 N.E.2d 408, 411 (Ind.1997). Only when the trial court fails to find a significant mitigating circumstance that is clearly supported by the record is there a reasonable indication that it was overlooked. *Id.* Anderson's statement to the trial court focused more on the effects of the crime on Anderson, his lost career as a police officer, and the effect on his family than it did on remorse for his reckless driving and the life that it took. Remorse was not a significant mitigating circumstance that the trial court was compelled to consider in this case.[5]

Finally, Anderson argues that imposing the "maximum sentence" of 180 days for the false reporting conviction was manifestly unreasonable. He does not, however, contend that his four-year sentence for reckless homicide was manifestly unreasonable. The sentences were ordered served concurrently.

The Indiana Constitution gives this Court the power to review and revise sentences "to the extent provided by rule." Ind. Const. Art. VII, § 6; *Redmon v. State,* 734 N.E.2d 1088, 1094 (Ind.Ct.App. 2000). We will revise a sentence authorized by statute only when it is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 17(B).[6] Cases in which sentences were imposed on two or more counts have looked to the aggregate sentence in determining whether a sentence is manifestly unreasonable. *Noojin,* 730 N.E.2d at 679 ("The aggregate sentence of 100–years is not manifestly unreasonable."); *Saunders v. State,* 584 N.E.2d 1087, 1089 (Ind.1992) (140–year sentence for three counts of dealing and three counts of conspiracy manifestly unreasonable); *Hardebeck v. State,* 656 N.E.2d 486, 491 (Ind.Ct.App.1995), *trans. denied* ("The nature of Hardebeck's offenses justifies what is tantamount to a life sentence, and we cannot say that the 240–year sentence is manifestly unreasonable."). Anderson does not challenge, and we do not find that, his presumptive four-year sentence for reckless homicide was manifestly unreasonable. We similarly decline to find the concurrent 180–day sentence for false reporting to be manifestly unreasonable.

## Conclusion

The convictions and sentences are affirmed.

Affirmed.

SHARPNACK, C.J., and SULLIVAN, J., concur.

---

5. Anderson also suggests that the trial court "improperly stated that Anderson intended the consequences of Hensley's death." Brief of Appellant at 20. In discussing the mitigating circumstances proffered by defense counsel, the trial court stated

"I do not find, however, the lack of [Anderson's] intent to kill Danny Hensley is a mitigating factor, because if he intended to kill Danny Hensley, then we would be talking about a Manslaughter or Murder charge and the conviction for Reckless Homicide assumes lack of intent to kill anyone, but it does also, assume if conviction is [sic] that he intended the consequences or least he intended to act as he did, regardless of the consequences and that was what he was found guilty of."

R. at 1074. This explanation for rejecting a mitigating circumstance was not error.

6. For appeals initiated effective January 1, 2001, the applicable rule is Indiana Appellate Rule 7(B).